IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

WENDY R.,[1]

        Plaintiff,

v.

COMMISSIONER, Social Security Administration,

        Defendant.

Case No. 6:19-cv-00176-SU

**OPINION AND ORDER**

SULLIVAN, United States Magistrate Judge:

    Plaintiff Wendy R. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). This Court has

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and last name initial of non-government parties and their immediate family members.

Page 1 – OPINION AND ORDER

jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* (Docket No. 9). For the reasons that follow, the Commissioner's final decision is AFFIRMED and this case is DISMISSED.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI on November 18, 2014, alleging disability for a closed period of time.[2] Her application was denied initially and upon reconsideration. Tr. 112, 128. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on September 1, 2017. Tr. 37–56, 148–50. On January 4, 2018, an ALJ issued a decision finding plaintiff not disabled during the period of November 18, 2014 through October 2016 within the meaning of the Act. Tr. 17–25. The Appeals Council denied plaintiff's request for review on December 13, 2018, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. This appeal followed.

## FACTUAL BACKGROUND

Born in 1962, plaintiff was 53 years old on her alleged onset date. Tr. 103. She completed school through the ninth grade and has past work experience managing a video arcade, cashiering at a service station, and working as a customer service representative at call center. Tr. 43–46, 224–25. She alleged disability based on Graves' disease and difficulties with her back, hip, hand and wrist. Tr. 223.

---

[2] "Tr." citations are to the Administrative Record. (Docket No. 16).

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At

step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

# THE ALJ'S DECISION

At step one, the ALJ found that plaintiff began engaging in substantial gainful activity beginning in October 2016 when she returned to work.[3] Tr. 20. However, prior to that date, there had been a continuous 12-month period during which she had not engaged in substantial gainful activity, and the remainder of the ALJ's decision addressed that closed period. *Id*. At step two, the ALJ found that plaintiff had had the following severe impairments: Graves' disease, status-post total thyroidectomy with associated Graves' ophthalmopathy; cardiomyopathy; lumbar spondylosis with radiculopathy; and right hip osteoarthritis. *Id*.[4]

At step three, the ALJ found that plaintiff did not have an impairment or combination thereof that met or equaled a listed impairment. *Id*. The ALJ found that plaintiff had the RFC to perform light work, with the following limitations:

> [S]he [was] limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. She [was] limited to sitting, standing, and/or walking each about six hours in an eight-hour workday, with normal breaks. [She was] limited to no more than occasional climbing of ramps or stairs and no climbing of ladders, ropes, or scaffolds. [She was] limited to no more than occasional stooping, kneeling, crouching, and crawling. [She] must avoid workplace hazards.

Tr. 21.

At step four, the ALJ found that plaintiff was capable of performing her past relevant work as a gas station attendant and as a cashier Tr. 24–25. Because the ALJ found that plaintiff could

---

[3] As will be discussed in more detail below, plaintiff returned to work following a successful thyroidectomy. Tr. 20, 22, 218; *see also* Tr. 47–48 ("Well after the thyroid surgery, I started feeling a lot better . . . . I feel good enough to go to work, you know.").

[4] Plaintiff had previously applied for disability benefits based on similar impairments including Graves' disease. The application was denied on May 1, 2013. Tr. 92.

perform her past relevant work, she did not proceed to the fifth step of the sequential analysis. *Id.* The ALJ thus found plaintiff was not disabled within the meaning of the Act. *Id.*

**ANALYSIS**

Plaintiff asserts that remand is warranted for two reasons. First, she asserts that the ALJ erred by improperly assessing the medical opinion evidence. Second, she contends that the ALJ in this case was appointed in violation of the Appointment Clause.

### I. Medical Opinion

Plaintiff assigns error to the ALJ's weighing of the medical evidence. Specifically, she asserts that the ALJ failed to supply specific and legitimate reasons to discount the opinion of Kari Tyne, M.D.[5]

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r,* 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester,* 81 F.3d at 830. A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan,* 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater

---

[5] There is some confusion about the name of plaintiff's treating physician. However, after reviewing the record, the court is satisfied that the doctor's name is Kari Tyne, M.D.

weight to the opinion of an examining physician than that of a non-examining physician. *Lester,* 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester,* 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue,* 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews v. Shalala,* 53 F.3d 1035, 1042 (9th Cir. 1995). In general, the more consistent an opinion is with the record as a whole, the more weight will be given to that opinion. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

### A. Kari Tyne, M.D.

Dr. Tyne supplied a two-page check-box RFC assessment January 2016. Tr. 513–14. The doctor diagnosed plaintiff with "hyperthyroidism/Graves [disease]." Tr. 513. Dr. Tyne checked boxes indicating that plaintiff's symptoms would interfere with her attention and concentration often, and that she would require reclining or laying down during a typical workday, which would include hourly unscheduled breaks. *Id.* Additionally, she checked boxes indicating that plaintiff could sit up to four hours and stand or walk approximately one hour in an eight-hour workday. *Id.* Dr. Tyne indicated that plaintiff could occasionally lift and carry up to ten pounds, but could never lift or carry twenty pounds. *Id.* Finally, the doctor estimated that plaintiff could walk one block before requiring rest and that her impairments would cause absences from work three to four times per month. Tr. 513–14.

The ALJ assigned little weight to Dr. Tyne's opinion for two reasons. First, the ALJ noted that plaintiff's daily activities were inconsistent with the Dr. Tyne's opinion. Second, the ALJ observed that Dr. Tyne's "extremely restrictive opinion" was inconsistent with the medical record, which showed that plaintiff "received good benefit from her medications, and despite a short period of difficulty related to a series of thyroid storms, she was able to quickly return to work once she underwent her thyroidectomy." Tr. 24.

Inconsistency between a treating provider's opinion and a claimant's reported daily activities can form a valid basis to discount a medical opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). Here, however, the ALJ's decision lacks the requisite specificity because it failed to identify which activities conflicted with Dr. Tyne's opinion. As such, the ALJ's mere recitation of plaintiff's activities of daily living was not a specific and legitimate reason to discount Dr. Tyne's opinion. *See Rowland v. Berryhill*, No. 3:16-cv-2334-SI, 2017 WL 5297946, at *4 (D. Or. Nov. 13, 2017) (rejecting ALJ's reliance on the claimant's daily activities to discount medical opinion where "the ALJ failed to explain how any of those activities were inconsistent with [the doctor's] findings").

The ALJ's second rationale, however, sufficed as a specific and legitimate reason to discount Dr. Tyne's opinion. *See Tommasetti*, 533 F.3d at 1040 (inconsistencies between an opinion and medical records is a specific and legitimate reason to discount treating physician). For example, the ALJ highlighted that plaintiff reported medication improved her thyroid symptoms, which is inconsistent with the doctor's extreme limitations. Tr. 22 (citing Tr. 315 (reporting in September, 2014 feeling "a lot better on methimazole"); Tr. 318 (reporting in July, 2014 "feeling better on decreased methimazole") Tr. 383 (reporting in May, 2015 "overall symptoms are

improving"); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling") (citations omitted).

The ALJ also noted that, despite several hospitalizations in late 2015, after a thyroidectomy in early 2016, the record reflects that plaintiff's thyroid symptoms were largely well controlled such that plaintiff was able to return to work. Tr. 23–24; *see also* Tr. 584 ("5 days status post thyroidectomy and clinically doing well"); Tr. 579 ("1-month status post thyroidectomy and clinically doing well. Weight is up and she is feeling well."); Tr. 565 (reporting normally functioning thyroid gland); Tr. 560 (same); Tr. 556 (same); Tr. 708 (reporting hypothyroidism was "[w]ell controlled"); *see also* Tr. 47–48 ("Well after the thyroid surgery, I started feeling a lot better . . . . I feel good enough to go to work, you know."). This evidence is inconsistent with Dr. Tyne's extreme limitations resulting from plaintiff's hyperthyroidism and constitute a specific and legitimate rationale to discount the opinion. *See Lucas v. Comm'r Soc. Sec. Admin.*, No. 6:13-cv-01178-MA, 2014 WL 5473806, at *8 (D. Or. Oct. 28, 2014) (finding ALJ supplied specific and legitimate reasons to discount medical opinion based in part on "improve[ment] after surgery"). Although plaintiff offers an alternative interpretation of the medical evidence, the ALJ's interpretation is rational reading of the record and must therefore be upheld. *Burch*, 400 F.3d at 679; *see also Garrison*, 759 F.3d at 1009 ("The ALJ is responsible for . . . resolving conflicts in medical testimony, and for resolving ambiguities.") (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B.  Plaintiff's Remaining Contentions

The Court briefly addresses plaintiff's additional contentions, all of which fail to provide a basis to overturn the ALJ's evaluation of the medical evidence. Plaintiff asserts that the opinion

of the state agency medical consultant Susan Moner, M.D., who the ALJ assigned weight, "focused on the wrist and back, not significantly addressing the thyroid issue" and therefore should not have been relied on by the ALJ. Pl.'s Op. Br. 16; Pl.'s Reply 2–3. The Court disagrees. Dr. Moner's opinion discussed plaintiff's treatment record—including endocrinology treatment—throughout the period at issue. *See* Tr. 120–21. The ALJ gave the opinion weight because it was "consistent with the objective findings in the medical record," which was a valid consideration under the regulations. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The Court declines to independently reweigh the medical evidence based on plaintiff's preferred interpretation of the record.

Plaintiff's assertion that the ALJ was obliged to consult a medical expert because the "ALJ [could not] adequately asses the limitations derive[d] from the raw data of the record" is similarly misplaced. Pl.'s Br. 16. It is precisely the province of the ALJ to resolve "conflicts in medical testimony, and [to] resolv[e] ambiguities" in the medical evidence. *Garrison*, 759 F.3d at 1009; *see also Blair v. Astrue*, 2010 WL 5135619, at *8 (E.D. Wash. Dec. 7, 2010) ("[T]he decision to call a medical expert . . . is within the discretion of the ALJ.") (citing *Magallanes v. Bowen,* 881 F.2d 747, 753 (9th Cir. 1989)). Here, the ALJ adequately discussed the evidence upon which the RFC was formulated.

Finally, plaintiff's assertion that the ALJ was required to develop the record further also fails. An ALJ's duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (citation omitted). Here, the ALJ discussed plaintiff's subjective symptom testimony, which plaintiff does not challenge on appeal, and the medical evidence of record in formulating her RFC. Although plaintiff may disagree, the ALJ's

interpretation is a rational reading of the record that the Court declines to disturb. *See Burch*, 400 F.3d at 679; *see also Garrison*, 759 F.3d at 1009.

In sum, the ALJ supplied a specific and legitimate reason supported by substantial evidence to discount the opinion of Dr. Tyne, and the Court does not find an alternative basis to overturn the ALJ's evaluation of the medical opinion evidence. The ALJ is affirmed as to this issue.

## II.     Appointment Clause

Plaintiff asserts that the ALJ who oversaw her hearing was unconstitutionally appointed and argues her "application should be immediately remanded for a new hearing with a different and constitutionally appointed ALJ." Pl.'s Op. Br. 18–22.

In support of her argument, plaintiff relies on the Supreme Court's decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2051 (2018). There, the Court held that Securities and Exchange Commissioner ("SEC") ALJs were "Officers of the United States" subject to the requirements of the Appointments clause. *Lucia*, 138 S. Ct. at 2051–55 (2018); *see also* Art. II, § 2, cl. 2. Thus, because the ALJ at issue in *Lucia* was not properly appointed "a new hearing before a properly appointed official" was the appropriate remedy. *Id.* (citing *Ryder v. United States*, 515 U.S. 177, 182–83) (1995)).

Appointment Clause challenges, however, are nonjurisdictional and can be forfeited if they are not timely asserted. *See Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 878–79 (1991); *see also Kabani & Co., Inc. v. U.S. Sec. & Exch. Comm'n*, 733 F. App'x 918, 919 (9th Cir. 2018) (holding that Appointment Clause challenge was forfeited were not timely raised). Indeed, *Lucia* conditioned relief in part upon making "such a *timely* challenge[.]" *Lucia*, 138 S. Ct. at 2055 (emphasis added). Further, in the Ninth Circuit, a claimant "must raise all issues and evidence at [her] administrative hearing[] in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d

1111, 1115 (9th Cir. 1999); *see also Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (explaining that *Meanel's* preservation requirements remain binding on courts within the Ninth Circuit).

Here, plaintiff does not contest that she failed to raise her challenge to the ALJ and before the Appeals Council. Instead, she asserts she was not required to raise the issue at all at the administrative level and relies exclusively on non-binding, out of circuit, cases in support of her claim.

The Court is not persuaded and follows the reasoning of other district courts throughout the Ninth Circuit that routinely find that Appointments Clause challenges are waived when not properly asserted before the Agency. *See, e.g., Younger v. Comm'r of Soc. Sec. Admin.*, 2020 WL 57814, at *5 (D. Ariz. Jan. 6, 2020) ("Other district courts in this circuit have found that a claimant's failure to raise an Appointments Clause challenge before the ALJ forfeits the issue upon judicial review."); *Byrd v. Berryhill*, 2019 WL 95461, at *6 (E.D. Cal. Jan. 3, 2019) ("However, to the extent *Lucia* applies to Social Security ALJs, [the claimant had] forfeited the issue by failing to raise it during [her] administrative proceedings.") (citation and internal quotation marks omitted; bracketing in original); *Marie T. v. Comm'r of Soc. Sec. Admin.*, No. 6:18-cv-00191-JR, 2018 WL 7078674, at *7 (D. Or. Nov. 30, 2018) (rejecting Appointments Clause challenge in part because the "objection was not made before the Agency"), *adopted sub nom.*, 2019 WL 267717 (D. Or. Jan. 17, 2019); *cf. Steve Edward L. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-cv-00072-MK, 2019 WL 6840846, at *2 n.4 (D. Or. Dec. 16, 2019) (holding that Appointment Clause challenges are forfeited when not properly raised).

As such, because plaintiff failed to timely raise her Appointments Clause challenge at her administrative hearing and before the Appeals Council, the Court finds she has forfeited this claim. *See* Tr. 37–76, 294–300; *see also Meanel*, 172 F.3d at 1115; *Younger*, 2020 WL 57814, at *5.

## CONCLUSION

For these reasons, the Commissioner's decision denying plaintiff's application for SSI is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 10th day of March, 2019.

/s/ Patricia Sullivan

PATRICIA SULLIVAN
United States Magistrate Judge